UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JONATHAN TORRES-SOTO, | No. 1:15-CV-03169-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 12, 13. Attorney D. James Tree represents Jonathon Torres-Soto (Plaintiff); Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) October 12, 2010, alleging disability since April 1, 2010, due to left knee, wrist, and ankle injuries. Tr. 198-203, 223, 227. The application was denied initially and upon reconsideration. Tr. 113-116, 120-128. Administrative Law Judge

(ALJ) Virginia M. Robinson held a hearing on August 13, 2013, and heard testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 39-74. At the hearing, Plaintiff requested a closed period of disability from April 1, 2010, to October 13, 2011. Tr. 45. The ALJ issued an unfavorable decision on February 20, 2014. Tr. 25-33. The Appeals Council denied review on July 29, 2015. Tr. 1-8. The ALJ's February 20, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 25, 2015. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 26 years old at the date of application. Tr. 198. The last grade Plaintiff completed was either the ninth or tenth in Puerto Rico. Tr. 228, 399. Plaintiff has past work in the areas of construction and fabrication. Tr. 223, 236. In April of 2010, Plaintiff was caught in the cross fire exchanged between two cars and shot four times; while running for cover, he got his left foot caught in a drain and injured his ankle. Tr. 50-51, 308.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put

another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 20, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from April 1, 2010, to October 12, 2011. However, Plaintiff became engaged in substantial gainful activity starting October 13, 2011, through the date of the ALJ's decision. Tr. 27.

At step two, the ALJ determined Plaintiff had the following severe impairments: "left wrist fracture, dysfunction of major joint." Tr. 27.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 29.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> [T]he claimant could stand or walk for approximately two hours per eight hour day and sit for approximately six hours per eight-hour day with normal breaks. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, crouch, or crawl. He is limited to frequently stooping. The claimant can frequently reach and finger. He can have unlimited handling with the right hand and frequent handling with the left hand. He should avoid concentrated exposure to excessive vibration and workplace hazards such as dangerous machinery and working at unprotected heights.

Tr. 29. The ALJ concluded that Plaintiff was not able to perform his past relevant work. Tr. 32.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of bench assembler, circuit board assembler, and semi-conductor bonder. Tr. 33. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date of application, October 12, 2010, through the date of the

1    ALJ's decision, February 20, 2014.  Tr. 33.

2                                **ISSUES**

3          The question presented is whether substantial evidence supports the ALJ's

4    decision finding Plaintiff not disabled and, if so, whether that decision is based on

5    proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to find

6    Plaintiff's mental health impairments severe at step two; (2) failing to consider

7    listings 1.06 and 1.08 at step three; (3) failing to properly determine Plaintiff's

8    credibility; and (4) failing to properly weigh medical source opinions in the record.

9                               **DISCUSSION**

10   **A.     The ALJ did not error in finding mental impairments not severe**

11         Plaintiff argues that the ALJ erred at step two by not finding Plaintiff's

12   mental health impairments severe.  ECF No. 12 at 13.

13         Step two is "a de minimis screening device [used] to dispose of groundless

14   claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ may find

15   a claimant lacks a medically severe impairment or combination of impairments

16   only when this conclusion is "clearly established by medical evidence."  S.S.R. 85-

17   28; *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005).

18         In supporting her step two determination, the ALJ cited an evaluation

19   performed by Jose Perez, M.Ed., and a review of the medical evidence by state

20   agency psychologist, Dr. James Bailey.  Tr. 28.  Plaintiff argues that the ALJ erred

21   by not discussing the evaluation and treatment records from Abdul Qadir, M.D.

22   ECF No. 12 at 13.

23         Dr. Qadir completed an initial psychiatric evaluation on May 12, 2011, in

24   which he diagnosed Plaintiff with major depressive disorder and post-traumatic

25   stress disorder (PTSD).  Tr. 398-401.  Dr. Qadir stated that "the voices seem more

26   to be anxiety-induced or PTSD-induced voices.  They do not appear to be

27   schizophrenic-type voices."  Tr. 401.

28         Despite Plaintiff's assertions that Dr. Qadir's opinion was erroneously

1    ignored, ECF No. 12 at 13, Dr. Qadir's evaluation was not a functional assessment

2    to be considered and weighed like other medical source statements.  Instead, it was

3    simply an evaluation with a diagnosis.  Therefore, unlike medical source opinions,

4    it was not required to be discussed and either accepted or rejected by the ALJ.

5         Therefore, the ALJ did not error in his step two determination that Plaintiff's

6    mental health impairments were not severe.

7    **B.    The ALJ failed to consider listings 1.06 and 1.08 at step three**

8         At step three of the five-step sequential evaluation process, the ALJ must

9    consider whether the claimant's impairment or combination of impairments meets

10   or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

11   Pt. 404.  § 404.1520(a)(4)(iii).  Here, the ALJ determined at step three that Plaintiff

12   did not have an impairment or combination of impairments to meet or medically

13   equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404, but

14   stated reasons relevant only to whether the severity of Plaintiff's impairment

15   satisfied listing 1.02 Major dysfunction of a joint(s) (due to any cause).  Tr. 29.

16        The ALJ found that Plaintiff's severe impairments included "left wrist

17   fracture, dysfunction of major joint."[1]  Tr. 27.  Both of these severe impairments

18   resulted from the April 2010 shooting incident, either from the gunshot wounds or

19   _____

20        [1]The Court finds that the ALJ's step two determination referencing

21   "dysfunction of a major joint," is vague, as it is unclear if she is referring to

22   Plaintiff's left ankle injury, left wrist injury, or both.  It would appear by her

23   analysis at step three, in which she considered both the ability to ambulate

24   effectively and the ability to perform fine and gross movements effectively, that

25   the ALJ's step two finding of "dysfunction of a major joint" as a severe

26   impairment refers both to Plaintiff's left ankle and left wrist.  Tr. 29.  On remand,

27   the ALJ is instructed to make a new step two determination in which she states the

28   severe impairments with specificity.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

from injuries sustained while fleeing the shooting.  Tr. 292, 308.

**1.    Listing 1.06**

Listing 1.06 requires a fracture of the femur, tibia, pelvis, or one or more of the tarsal bones with a solid union not evident on appropriate medically acceptable imaging and not clinically solid and an inability to ambulate effectively.  20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.06.

Plaintiff's left ankle injury was a malunion of trimalleolar ankle fracture dislocation with shortening malunited fibula with subluxation and tail in the ankle mortise as evidence by x-rays.  Tr. 490.  The injury occurred in April 2010, yet the surgery to repair it was not done until February 2011.  Tr. 486-490.  By March 28, 2011, Plaintiff is still not able to put full weight on the left leg.  Tr. 482.  By May of 2011, Plaintiff was allowed to return to wearing his normal shoe and bearing weight as tolerated.  Tr. 480.  His provider noted "[h]e is again educated that he is not going to ever have a normal ankle and that he can expect some degree of pain and swelling for some time to come, but overall things are structurally solid and improved."  *Id.*  Therefore, there is evidence that Plaintiff could have met or medically equaled listing 1.06 for at least twelve months following the initial injury.

Arguably, the ALJ's determination that Plaintiff did not meet listing 1.02, which also requires the inability to ambulate effectively would also preclude any potential for meeting or equaling listing 1.06.  However, the ALJ did not make a determination on Plaintiff's ability to ambulate effectively that is supported by substantial evidence.  Tr. 29.  Listing 1.002B2b defines inability to ambulate effectively as an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities," 20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.00B(2)(b)(1), and it illustrates this definition with examples.  Those examples include the following:

> [T]he inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id*. Generally, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id*. Here, the ALJ did not analyze whether Plaintiff could ambulate effectively. She did not consider whether he could "sustain … a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Nor did she compare Plaintiff's functional ability to the examples provided in the listing to determine if Plaintiff could "walk a block at a reasonable pace on rough or uneven surfaces . . . carry out routine ambulatory activities, such as shopping and banking . . . [or] climb a few steps at a reasonable pace with the use of a single hand rail." Rather, the ALJ erroneously treated Plaintiff's inability to ambulate effectively as a dispositive fact and ended her step-three inquiry prematurely.

Therefore, the ALJ's failure to consider listing 1.06 and failure to properly analyze Plaintiff's ability to ambulate effectively was an error.

### 2. Listing 1.08

Listing 1.08, soft tissue injury, requires a soft tissue injury of the upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset. 20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.08. The term "under continuing surgical management" is defined as follows:

> [R]efer[ing] to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or

1
2
3
4

> restoration of functional use of the affected part.  It may include
> such factors as post-surgical procedures, surgical complications,
> infections, or other medical complications, related illnesses, or
> related treatments that delay the individual's attainment of
> maximum benefit from therapy.

5  20 C.F.R., Pt. 404, Subpart P, Appendix 1, § 1.00M.

6      The gunshot wound to Plaintiff's wrist resulted in a complete division of the

7  median nerve.  Tr. 524.  Plaintiff underwent a surgical procedure in which a nerve

8  was grafted from his lower right leg to the left wrist in August of 2011.  Tr. 525-

9  526.  While there may be some factual question of whether or not the treatment of

10 Plaintiff's wrist impairment can be considered "under continuing surgical

11 management" from the April 2010 injury through the recovery period following

12 the August 2011 repair, the ALJ failed to even consider the soft tissue injury to

13 Plaintiff's left wrist from the gunshot wound under listing 1.08.  This was error.

14     The case is remanded for additional proceedings for the ALJ to properly

15 consider listings 1.06 and 1.08 and to analyze Plaintiff's ability to ambulate

16 effectively under listings 1.02 and 1.06.

17 **C.    Upon remand the ALJ will consider Dr. Francis' opinion**

18     This case is to be remanded to address step three under listings 1.06 and

19 1.08.  As part of that new step three determination, the ALJ will address the

20 opinion of Anthony E. Francis, M.D.

21     On April 27, 2014, after the ALJ's decision, Dr. Francis reviewed the

22 medical records through exhibit 15F, and opined that Plaintiff "equaled [listings]

23 1.02A/1.06/1.08 in combination for a delayed treatment of a trimalleolar ankle

24 fracture and continued pain in the left wrist following gunshot trauma."  Tr. 669.

25 Dr. Francis then went on to summarize the evidence supporting his opinion.  Tr.

26 669-670.  While Dr. Francis' opinion was penned after the ALJ's decision, the

27 opinion states that the Plaintiff had equaled the listings in combination "following

28 [the] gunshot trauma."  Tr. 669.  This indicates that the status has been persistent

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

since Plaintiff sustained the initial injuries.  Therefore, this opinion pertains to the relevant time period and should be considered on remand.

**D.      The ALJ is to address the remaining issues on remand**

In addition to the issue addressed above, Plaintiff challenges the ALJ's credibility determination and the weight given to medical source opinions in the record.  ECF No. 12 at 5-9, 14-19.  Generally, credibility of Plaintiff and the weight given to opinions in the record are issues determined as part of the residual functional capacity determination, which is only required if a claimant does not meet or equal a listing at step three.  Upon remand, if a residual functional capacity determination is necessary, the ALJ is instructed to make a new credibility determination and to readdress the medical source opinions in the record.

# REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine whether or not Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments at step three. In doing so, the ALJ will consider the opinion of Dr. Francis. Should a residual functional capacity determination be necessary, the ALJ is instructed to make a new determination regarding Plaintiff's credibility and the weight provided to medical source opinions in the record. Additionally, the ALJ is instructed to supplement the record with any outstanding records pertaining to the relevant time period, and elicit testimony from a vocational expert should a step four or five determination be necessary.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED October 14, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11